**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-7464

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DANIEL ANTHONY WEYMOUTH,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Jerome B. Friedman, District Judge. (CR-03-82)

Argued: September 25, 2007          Decided: December 6, 2007

Before WILKINSON, NIEMEYER, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

**ARGUED:** Leeann N. Rosnick, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant. Richard Daniel Cooke, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Erwin Chemerinsky, James E. Coleman, Jr., Catherine Fisk, Jessica A. Bodger, Laura Durity, Michael P. Goodman, Elizabeth Magee, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant. Chuck Rosenberg, United States Attorney, Laura P. Tayman, Assistant United States Attorney, Edward K. Nickel, Third Year Law Student, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

Daniel Weymouth pleaded guilty to conspiracy to distribute ecstasy and PCP in Chesapeake, Virginia, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), and the district court sentenced him to 124 months' imprisonment. Ten months later, Weymouth filed a motion in the district court under 28 U.S.C. § 2255 to have his conviction vacated, contending that in pleading guilty, he was denied the effective assistance of counsel. He claimed that in one of three letters advising him what sentence to expect, his counsel told him that he faced a <u>minimum</u> sentence of 20 years' imprisonment, whereas he actually faced a <u>maximum</u> sentence of 20 years' imprisonment, as provided by 21 U.S.C. § 841(b)(1)(C). The district court denied his § 2255 motion, finding that Weymouth had satisfied neither prong of the analysis under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), required to demonstrate that he had been denied the effective assistance of counsel. For the reasons that follow, we affirm.

I

After law enforcement officers purchased ecstasy at a house in Chesapeake, Virginia, they executed a search warrant there on February 21, 2003. During this search, the occupants of the house advised the officers that "Dan, Mike and Mike" would be coming to the house later with an additional supply of ecstasy. As represented, three men arrived at the house at about midnight, and

two of the men went to the side door, where law enforcement officers detained and searched them. Michael Riopel was found to have 100 tablets of ecstasy in his pocket, and the defendant Weymouth was found to have $2,470 in cash and more than 40 pills and capsules. The pills found on Weymouth were later determined to contain ecstasy and PCP.

After being advised of his constitutional rights, Weymouth told officers, "you got me." When they asked him about the $2,470 in cash that he was carrying, Weymouth indicated that he was planning to travel to New York City that night to purchase more ecstasy. He informed the officers that he had previously made 10 to 20 trips to New York to obtain ecstasy, and on each trip he had returned with between 500 and 1,000 pills. He said that on most of the trips he returned with 500 pills, and that a smaller quantity was not worth his while.

Weymouth was indicted in six counts: one for conspiracy to distribute and possess with intent to distribute ecstasy and PCP, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C); two counts for possession with intent to distribute ecstasy and PCP, in violation of id. §§ 841(a)(1) and 841(b)(1)(C); and three counts for possession of ecstasy and PCP, in violation of id. § 844.

During the pretrial period, Weymouth's court-appointed attorney corresponded with him by letter at least three times,

4

giving him advice on how to proceed. In her first letter, dated June 20, 2003, Weymouth's attorney indicated that a "rough estimate" of the Sentencing Guidelines calculation placed Weymouth at level 28. With an estimated criminal history category of V and a potential two or three-point reduction if Weymouth accepted a plea bargain, she estimated that the likely sentence would be 110-137 months' imprisonment. She confirmed that the residents of the house where Weymouth was arrested would testify against him and that his post-<u>Miranda</u> statements to law enforcement officers were "completely inculpatory."

In her second letter, dated June 25, 2003, Weymouth's counsel informed him that if he went to trial he faced 140-175 months' imprisonment and that "[o]f course, if you go to trial, you have no defense." She also informed him that he probably had a criminal history of category VI, which would increase the Sentencing Guideline range to approximately 151-188 months' imprisonment, even after a plea bargain. She stated, however, that she was still investigating whether he qualified as a career offender. She continued:

> You advised me today in lock up after the arraignment that you would take a plea and cooperate if you were a [Career Offender] but that you only wished to plead "straight up" if you were not a [Career Offender].
>
> *     *     *
>
> As I currently understand it, you are willing to plead in either case, you just don't want to have to cooperate if you don't qualify as a Career Offender.

In her third letter, dated July 15, 2003, Weymouth's attorney advised him that "[he] really [did] not have standing to contest the search warrant" which led to his arrest. Furthermore, she reminded him that "[y]ou still must face the reality that Mike Riopel will be testifying against you at trial, as will Daniel Clair/Reese and maybe Mike Phillips. Their testimony will still be sufficient to convict . . . ." She also made the following statement, which forms the basis of Weymouth's claim for ineffective assistance of counsel:

> Lastly, if you go to trial the government will most definitely file an 851 notice of intent to increase your potential penalties (see highlighted part of enclosed statute). That would mean your statutory low end would be 20 years, and the maximum would be life. Of course, if it turns out you are a career offender, then your guidelines will put you very near the 20 years anyway.

Attached to the letter was a xeroxed copy of 21 U.S.C. § 851 and the portion of § 841(b)(1)(A) which provides for a 20-year mandatory minimum sentence. The language of Weymouth's counsel's letter is confusing and in some parts incorrect. It is apparently correct insofar as it states that if Weymouth is a career offender the recommended sentence would be near 20 years. But it is obviously incorrect to state that if the government filed a § 851 notice, Weymouth's sentencing range would be 20 years to life. While that would be true under § 841(b)(1)(A), it was not true for an offense under § 841(b)(1)(C), which provides for a 20-year

6

maximum sentence, or 30 years if a § 851 information of a prior drug conviction were filed.

Weymouth ultimately pleaded guilty to Count I of the indictment, charging him with conspiracy to distribute and possess with intent to distribute ecstasy and PCP, in return for the government's dismissal of the remaining charges. In sentencing Weymouth, the district court found that under the Sentencing Guidelines Weymouth's offense level was 25, including credit for acceptance of responsibility. With a criminal history Category VI, therefore, the Sentencing Guidelines provided for a sentencing range of 110-137 months' imprisonment. The district court sentenced Weymouth to 124 months' imprisonment.

Weymouth thereafter filed a motion under 28 U.S.C. § 2255 to set aside his conviction and sentence, claiming that he received ineffective assistance of counsel because his counsel stated to him that he faced a mandatory minimum sentence of 20 years for an indictment charging him with a violation under § 841(b)(1)(C). He claimed, "[i]f it was not for counsel's mistake I would have continued to trial like I had wanted." The district court denied Weymouth's motion, concluding first that Weymouth had not demonstrated that his attorney's performance, "when considered in its totality," was outside of "the wide range of reasonably professional conduct that Strickland permits." The court also concluded that even if his counsel's performance was sufficiently

7

deficient to establish the first prong of <u>Strickland</u>, Weymouth failed to establish the prejudice prong, given his acknowledgment of his guilt, his indication to the court at the Rule 11 hearing that he fully understood his plea agreement, and the lack of evidence that he would have proceeded to trial absent counsel's isolated erroneous statement. In response to Weymouth's petition for relief from the judgment under Rule 60(b), the court explained yet further:

> Here, petitioner has failed to establish that a <u>reasonable</u> defendant would not have pled guilty but instead insisted on going to trial. Petitioner not only stated under oath in front of this court that he was in fact guilty but he stated in his reply to the government's response to his § 2255 motion that he "doesn't wish to insult the court's intelligence by claiming actual innocence." Reply, p. 8. The petitioner has presented no evidence that a reasonable defendant, in the petitioner's position, in light of the evidence the government had against him, would have insisted on going to trial. Furthermore, the defendant acknowledges that if he went to trial and was found guilty he would have likely received a sentence greater than what he received as a result of the guilty plea. Instead, petitioner merely relies on his personal preference to risk a significantly higher sentence as evidence that <u>he</u> would have insisted on a trial but for the single mistake his counsel made. Petitioner has failed to establish prejudice under <u>Strickland</u> and <u>Hill</u>.

We granted the certificate of appealability on the issue of whether Weymouth's attorney provided ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).

8

To be entitled to relief, Weymouth must show that his counsel's conduct "fell below an objective standard of reasonableness," and that he was thereby prejudiced. <u>Strickland</u>, 466 U.S. at 688, 694. Because his claim follows a plea of guilty, demonstrating prejudice requires showing "'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988) (quoting <u>Hill</u>, 474 U.S. at 59).

Petitioner bases his claim on the single misstatement by his counsel that he was subject to a <u>minimum</u> sentence of 20 years and a maximum of life imprisonment. He claims that but for that statement, he would not have pleaded guilty. That claim, however, is belied by the record and by what any reasonable defendant in his position would have concluded.

<u>First</u>, his counsel repeatedly provided him with calculations under the Sentencing Guidelines, advising him correctly of the estimated sentencing ranges for a violation of § 841(b)(1)(C). In her first letter, his counsel advised that based on a criminal history Category V, Weymouth's likely sentence would be in the range of 110-137 months' imprisonment. In her second letter, Weymouth's counsel informed him that his criminal history was probably a Category VI and therefore his estimated sentencing

9

range would be 151-188 months' imprisonment. She also confirmed Weymouth's statement that he was willing to plead guilty regardless of whether he had to cooperate with the government, as he had no defense. Her third letter to Weymouth contained a misstatement of the sentence, but it also included a correct explanation that, "if it turns out you are a career offender, then your guidelines will put you very near the 20 years anyway." If Weymouth had paid attention to the one misstatement, he certainly would have raised a question in view of the extensive amount of correct information given to him about the applicable Guidelines range over the course of three letters.

Second, any doubt about the proper estimated range would have been put to rest by the written plea agreement which clearly stated, on its first page, that Weymouth was charged with a violation of 21 U.S.C. § 841(b)(1)(C) with a maximum penalty of 20 years' imprisonment. The plea agreement's information was consistent with the indictment, which Weymouth acknowledged having receiving, charging him with a violation of § 841(b)(1)(C), not § 841(b)(1)(A), and having a maximum sentence of 20 years' imprisonment.

Third, and perhaps most compelling, is the fact that at the Rule 11 colloquy, the district court clearly repeated the charges against Weymouth and the maximum sentence of 20-years' imprisonment. When asked at the Rule 11 colloquy if he understood

this penalty, Weymouth stated that he did.  The transcript reveals no evidence to indicate that Weymouth was in any way confused.  To the contrary, he assured the court that he was not confused and understood what he was being told.  This colloquy alone denies Weymouth the opportunity to claim that he reasonably relied on his counsel's mistake when the mistake was corrected at the Rule 11 hearing.  As we explained in United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc):

> [I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant.

The burden falls on Weymouth to demonstrate that he was prejudiced by any deficiency in his counsel's performance, and in this case, he has failed to carry that burden of showing prejudice.  See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995).

Weymouth relies on Hammond v. United States, 528 F.2d 15 (4th Cir. 1975), to argue that he was prejudiced by his advice of counsel.  In Hammond, counsel erroneously advised his client that he faced a 90-year sentence, when in reality he could at most have received a 55-year sentence.  The error that counsel made in Hammond, however, unlike that which occurred in Lambey, was reinforced by the clerk of the court during the Rule 11 hearing and was never corrected by the court.  Hammond, 528 F.2d at 16.

11

Accordingly, we vacated Hammond's guilty plea because counsel's erroneous advice had been "corroborated by the information supplied by the court." Id. at 19. In Lambey, on the other hand, the district court provided the defendant with the correct statement at the Rule 11 colloquy, correcting the erroneous advice given by the defendant's counsel earlier. Because those are the circumstances here, Lambey is the relevant precedent, and Weymouth's reliance on Hammond is misplaced.

Finding no prejudice, we need not reach the question of whether Weymouth's counsel was in fact deficient. The judgment of the district court is

AFFIRMED.